IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM MICHAEL FUITEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05-3246 |
| | ) |
| CREDITOR SERVICES BUREAU | ) |
| OF SPRINGFIELD, INC., CRAIG | ) |
| LEWIS, and WILLIAM F. LEWIS | ) |
| | ) |
| Defendants. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendants Creditor Services Bureau of Springfield, Inc. (CSB), Craig Lewis and William F. Lewis' Motion to Dismiss (d/e 10). The Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons set forth below, the Defendants' Motion is DENIED with respect to Count 1 and ALLOWED with respect to Counts 2 and 3.

## BACKGROUND

Plaintiff William Fuiten has filed a three-count Complaint (d/e 1), alleging violations of the Fair Debt Collection Practices Act (FDCPA)

1

(Count 1), 15 U.S.C. § 1692 et seq., the Illinois Collection Agency Act (ICAA)(Count 2), 225 ILCS 425/1 et. seq., and the Illinois Notary Public Act (INPA) (Count 3), 5 ILCS 312/1-101 et seq.  The allegations set forth in the Complaint are as follows.  Plaintiff Fuiten is an individual licensed to practice law in Illinois and resides in Springfield, Illinois.  Defendant CSB, a corporation incorporated under the laws of the State of Illinois, is engaged in the business of collecting debts from consumers on behalf of third party creditors.  Craig Lewis, the principle of CSB, is an individual residing in or about Springfield, Illinois.  Craig Lewis regularly engages in collection activities from consumers on behalf of third party creditors.  William Lewis resides in or about Springfield, Illinois.  He is licensed as a notary public with the State of Illinois.  He notarizes documents related to debt collection transactions undertaken by CSB and Craig Lewis.

     The Complaint alleges that, until September 2004, Fuiten worked as an attorney for CSB, assisting with collection matters.  According to the Complaint, in late September 2004, Fuiten discovered that CSB and Craig Lewis had forged his signature on at least 29 legal documents, including complaints, filed on behalf of third party creditors against defendants who were consumer debtors, in the Circuit Court of Illinois.  Fuiten alleges that

2

upon discovering this, he immediately withdrew the aforementioned documents from the Circuit Court and also withdrew his representation of CSB, Craig Lewis, and all third party creditors involved.

Plaintiff Fuiten alleges that, because of the Defendants' actions, he has not only suffered emotional distress and nervous stress, but also faces potential suits from consumer debtors. Plaintiff seeks an award of actual and statutory damages, plus attorney's fees and costs.

## ANALYSIS

The Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing and for failure to satisfy prudential limitations on standing with respect to the FDCPA claim. Specifically, the Defendants assert that the case or controversy requirement is not met in the present case because Plaintiff Fuiten lacks standing. The Defendants further assert that this Court lacks subject matter jurisdiction because Fuiten is not within the zone of interests protected by the statute in question, FDCPA. As to the INPA and ICAA claims, the Defendants contend that, because this Court lacks jurisdiction under Plaintiff's only federal claim, the supplemental state law claims should also be dismissed. The Defendants further contend that the ICAA claim should be dismissed based on the fact

3

that there is no liability under the statute as it does not apply to attorneys.

    A.   FDCPA

Under Article III of the United States Constitution, a party seeking to invoke federal court jurisdiction must present an actual case or controversy, a requirement that is referred to as the concept of justiciability. See Flast v. Cohen, 392 U.S. 83, 95 (1968). "Implicit in that limitation is the requirement that the party invoking the court's jurisdiction have standing." Kyles v. J.K. Guardian Security Services, Inc., 222 F.3d 289, 293 (7th Cir. 2000) (citing cases). The purpose of the requirement is to ensure that a plaintiff has "a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). A plaintiff seeking to invoke the power of the federal court bears the burden of demonstrating standing by establishing: (1) an "injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the conduct complained; and (3) that a favorable decision likely will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)

(internal quotations and citations omitted).

In addition to Article III limitations on standing, a party seeking to invoke federal court jurisdiction must also satisfy judicially-imposed prudential limitations. Massey v. Helman, 196 F.3d 727, 739 (7th Cir. 1999) (citing Warth v. Seldin, 422 U.S. 490, 498 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The prudential limitation at issue in this case is a requirement that a plaintiff's claim or interest must fall within the zone of interests protected by the statute that he or she invokes. Kyles, 222 F.3d at 294. Courts impose these prudential limitations in order to restrict federal court access to only those who are best suited to bring a particular claim and "to avoid deciding questions of broad social import where no individual rights would be vindicated. . . ." Id. (citing cases). In cases where:

> federal statutory rights are at issue [as in this case], however, Congress has considerable authority to shape the assessment of standing. First, although it may not lower the threshold for standing below the minimum requirements imposed by the Constitution, Congress can extend standing to the outermost limits of Article III. For example, it may permit an individual who suffers an injury-in-fact to bring suit for a statutory violation even if one normally would not think of that person as an intended beneficiary of the statute; or it can permit someone to seek relief based on the legal rights of individuals other than himself. When Congress confers such a broad right to sue, the

judiciary may not close the doors to the courthouse by invoking prudential considerations.

Id. at 294 (internal citations omitted).

A statute in point is § 810(a) of the Civil Rights Act of 1968. In Trafficante v. Metropolitan Life Insurance Co., the Supreme Court held that Congress intended to extend standing to the full extent allowed under Article III when it enacted § 810(a) of the Civil Rights Act of 1968, which authorizes any person injured by discriminatory housing practice to file a complaint with the Secretary of Housing and Urban Development. Trafficante, 409 U.S. 205(1972); see Bennett v. Spear, 520 U.S. 154, 165-66 (1997). Accordingly, the Supreme Court held that the statute accorded standing to two tenants of an apartment complex who complained that, because their landlord discriminated against nonwhites on account of race, they "lost the social benefits of living in an integrated community, missed business and professional advantages that would have accrued from living with members of minority groups, and suffered from being 'stigmatized' as residents of a 'white ghetto.'" Trafficante, 409 U.S. at 205. The Supreme Court reasoned that "[it] can give vitality to § 810(a) only by a generous construction which gives standing to sue to all in the same housing unit who

are injured by racial discrimination in the management of those facilities within the coverage of the statute." Id. at 212.

The Defendants assert that the case or controversy requirement is not met in the present case because Plaintiff Fuiten lacks standing. The Defendants further assert that this Court lacks subject matter jurisdiction because Fuiten is not within the zone of interests protected by the statute in question, FDCPA. If a defendant asserts that subject matter jurisdiction is not evident on the face of the complaint, a motion to dismiss pursuant to 12(b)(1) is analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true. However, if the complaint is formally sufficient but the defendant contends that there is "in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion. The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction. And the court is free to weigh the evidence to determine whether jurisdiction has been established." United Phosphorus, Ltd. v. Angus Chemical Co., 322 F.3d 942, 946 (7th Cir. 2003) (internal citations omitted).

The Defendants challenge the sufficiency of Plaintiff's allegations; thus, the challenge is facial, and the Court assumes for purposes of the

Motion that the allegations in the Complaint are true. The Complaint alleges, in relevant part, that "[t]he actions of CSB and Craig Lewis in forging Plaintiff's name to legal documents in an attempt to collect consumer debts was [sic] a violation of the FDCPA, for which Plaintiff has standing to bring an action for actual and statutory damages, as well as attorney's fees and costs." <u>Complaint</u>, ¶ 12. The Complaint further alleges that, as a result of the Defendants' actions, Plaintiff is now subject to potential suits from consumer debtors. Plaintiff further alleges that he has suffered emotional distress and nervous stress as a result of the Defendants' actions.

The Defendants challenge the injury-in-fact requirement by asserting that Plaintiff has failed to allege a specific and concrete injury. Specifically, the Defendants contend that Plaintiff's allegation of injury-in-fact -- the threat of facing potential suits from consumer debtors -- is too remote and uncertain to satisfy the injury-in-fact-requirement. Additionally, the Defendants contend that "Plaintiff never articulates how he might become 'potentially' liable for the alleged forgeries." <u>Defendants' Memorandum of Law in Support of its Motion to Dismiss</u> at 5.

The focus for the injury-in-fact requirement, however, is not that

8

Plaintiff is now potentially subject to suits from consumer debtors as a result of the Defendants' alleged actions, but that the Defendants allegedly violated the FDCPA by forging Plaintiff's signature on legal documents filed in court, all in connection with the Defendants' efforts to collect debts. See Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) ("We must focus on the debt collector's misconduct, not whether the debt is valid or, as here, whether the consumer has paid an invalid debt . . . ."). Indeed, § 1692e of the FDCPA provides in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * * *
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> * * * *

15 U.S.C. § 1692e (3). Plaintiff has sufficiently alleged that the Defendants violated the above subsection by forging Plaintiff's signature on legal documents filed in court, all in connection with their debt collection efforts, thereby falsely implying that the Defendants were represented by counsel who had prepared the legal documents on which he had stamped his approval with his signature. See e.g., Boyd v. Wexler, 275 F.3d 642, 643

9

(7th Cir. 2001) ("A lawyer who merely rents his letterhead to a collection agency violates the Act, . . . for in such a case the lawyer is allowing the collection agency to impersonate him."); Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996) ("if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file."); Clomon v. Jackson, 988 F.2d 1314 (2nd Cir. 1993) (It is a violation of the FDCPA when a debt collector falsely represents that a dunning letter is from an attorney, even though the attorney had no involvement in the defendant's collection efforts).

Additionally, under the FDCPA, even if Plaintiff lacks proof of actual damages, he may still recover statutory damages if he prevails on his FDCPA claim. Keele, 149 F.3d at 593. "In other words, the Act is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not." Id. at 593-94. As such, Plaintiff Fuiten has alleged sufficient facts to establish an injury-in-fact from the alleged violation of the FDCPA.

Fuiten has also alleged a claim within the zone of interest protected

by the FDCPA. In passing the FDCPA, Congress intended to extend standing to the outermost limits of Article III; this is supported by: (1) the broad language of § 1692k, allowing any person injured by fraudulent schemes of a debt collector to file a suit; (2) the purpose of the statute, which is "to eliminate abusive debt collection practices . . . to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers. . . ." and; (3) Congress's intent to authorize individuals to act as private attorney generals in enforcing the statutory rights. 15 U.S.C. § 1692; see Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 650 (6th Cir. 1994). Section 1692k(a) provides in part that "*any* debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person . . . ." 15 U.S.C. § 1692k. "[T]his 'liability section is couched in the broadest possible language.' Consequently, absent a limitation in the substantive provisions, the ordinary and common understanding of § 1692k is that any aggrieved party may bring an action under § 1692e." Wright, 22 F.3d at 649-50 (quoting Riveria v. MAB Collections, Inc., 682 F.Supp. 174 (W.D.N.Y. 1988)) (internal citations omitted).

11

In fact, the statutory language of § 1692k is similar to the language provided in § 8 of the Civil Rights Act of 1968, which provides in part that "[a]ny person who claims to have been injured by a discriminatory housing practice . . . that is about to occur . . . may file a complaint with the Secretary." As noted earlier, the Supreme Court held that the statutory language of § 8 of the Civil Rights Act of 1968, as well as the statutory purpose, reveals that Congress intended to define standing as broadly as is permitted by Article III. The Court is persuaded that Congress similarly intended to define standing as broadly as is permitted by Article III with respect to § 1692k of the FDCPA, by authorizing "any person," who has been injured by deceptive debt collection practices, to file a claim under that section.

In broadly construing the statutory language of § 1692k of the FDCPA, other courts have held that persons other than consumers and debtors had standing to sue under the FDCPA. In <u>Riveria</u>, the court held that "any person who comes in contact with proscribed debt collection practices may bring a claim." <u>Riveria</u>, 682 F. Supp. at 175 (citing <u>Whatley v. Universal Collection Bureau, Inc.</u>, 525 F.Supp. 1204, 1206 (N.D.Ga. 1981)). Therefore, the <u>Riveria</u> court held that regardless of when the

12

plaintiff was appointed as administratrix of the estate of a deceased debtor, she had standing to sue under the FDCPA because she came into contact with the defendant's proscribed debt collection practices when she received the collection letters addressed to her husband. Id. at 176. Similarly, in Flowers v. Accelerated Bureau of Collections, Inc. et al., the court held that a woman who experienced "threatening remarks" from a collection agency had standing to sue under the FDCPA, even though the collection agency's validation notice was addressed to her husband. Flowers, 1997 WL 136313 (N.D.Ill. 1997); see Dutton v. Wolhar, 809 F.Supp. 1130, 1134-35 (D. Del. 1992) (noting that protections provided in the FDCPA extend to nondebtors who have been harmed or injured by the abusive practices of a collection agency).

      The Defendants, however, cite to Burdett v. Harrah's Kansas Casino Corp. et al., arguing that Plaintiff does not have standing. Burdett, 294 F.Supp.2d 1215 (D.Kan. 2003). The facts of Burdett are distinguishable from those of this case. In Burdett, the plaintiff, spouse of a deceased debtor, alleged that a collection agency sent plaintiff's late husband 23 letters and made numerous telephone calls in its effort to collect the husband's debt, all after he died, but before the defendant learned of his

death. The <u>Burdett</u> court held that the widow did not have standing to sue under the FDCPA because the defendant's collection efforts were solely directed at her late husband. <u>Id.</u> at 1227. The court explained that all collection letters were addressed to plaintiff's late husband and plaintiff failed to provide any evidence to the contrary. <u>Id.</u> The Court noted that, "[u]nless plaintiff has a legal status which entitles her to stand in his shoes, she ordinarily does not have standing to assert a FDCPA violation based on collection efforts aimed at her spouse." <u>Id.</u> (citing <u>Dewey v. Associated Collectors, Inc.</u>, 927 F.Supp. 1172, 1174 (W.D.Wis. 1996)). Plaintiff Fuiten, however, has sufficiently alleged that the Defendants' action -- forging of Plaintiff's signature on at least 29 legal documents filed in court in connection with the Defendants' collection efforts -- directly involved Plaintiff and injured him.

The Defendants also argue that "Plaintiff, a former attorney assisting in the debt collection practices of the Defendant, CSB, is not the type of individual or 'person' which the Act seeks to protect." <u>Defendants' Memorandum of Law in Support of its Motion to Dismiss (d/e 11)</u> at 9. The Defendants assert that the FDCPA was intended to protect unsophisticated and naive consumers who fall prey to fraudulent schemes

14

of collection agencies, not a former attorney of a debt collector who should be held to a higher standard than the unsophisticated and naive consumer. The Defendants' contention is unpersuasive; they are confusing the substantive standard, by which courts determine whether an oral or written communication from a collection agency to a consumer debtor violates the FDCPA, with the requirements of standing.

The Seventh Circuit has adopted the "unsophisticated consumer" standard, which is essentially the same as the "least sophisticated consumer" standard adopted by other circuits, to determine whether a collection agency's communication to a consumer debtor is misleading and deceptive, thereby violating the FDCPA. See Gammon v. GC Services Ltd. Partnership, 27 F.3d 1254 (7th Cir. 1994). As Plaintiff Fuiten correctly asserts, the above "formulations are not rules of standing, but again are relevant to the elements of substantive violations." Plaintiff's Memorandum in Opposition to the Defendants' Motion to Dismiss (d/e 10) at 10. Therefore, Defendants' Motion to Dismiss on the bases of constitutional and prudential limitations on standing with respect to the FDCPA claim is denied.

B.  INPA and ICAA

Since Plaintiff has sufficiently alleged that this case arises under the FDCPA, which confers standing upon him to invoke this Court's jurisdiction, the Defendants' general Motion to Dismiss the supplemental state law claims as ancillary to the federal claim fails. However, Plaintiff's claim in Count 2 fails to demonstrate that he has any liability to anyone under the ICAA because he did not do anything that would be a violation of ICAA and, because, as an attorney, the ICAA does not apply to him. 225 ILCS § 425/2.03. And he has not been sued by anyone on any other theory in connection with the forged documents. Therefore, he has failed to allege facts showing that, under the ICAA claim, he has incurred any actual injury from Defendants' conduct. An assertion by Plaintiff that he has suffered emotional distress because he might be sued (even though he is exempt from the provisions of the ICAA) and an assertion that he lost income when he quit are not sufficient to state a claim for actual injury. And the ICAA, unlike the FDCPA, has no provision for statutory damages if Plaintiff were to prevail.

This Court, for purpose of this analysis, will assume there is an implied private right of action for violations of ICAA. However, like the courts in <u>McCabe v. Crawford & Co.</u>, 272 F.Supp.2d 736 (N.D.Ill. 2003)

and <u>Trull v. GC Services Ltd. Partnership</u>, 961 F.Supp. 1199 (N.D.Ill. 1997), this Court is of the opinion that in the absence of actual injury to Plaintiff, the Department of Professional Regulations' enforcement authority under ICAA provides adequate remedy. <u>See</u> 225 ILCS § 425/9. For these reasons the Court grants the Defendants' Motion to dismiss Count 2.

Likewise, Count 3 fails because Plaintiff has not incurred any actual injury. Although the Illinois Notary Public Act subjects the Notary to liability for all damages caused by the Notary's official misconduct, Plaintiff has not incurred actual damages. Again the Court dismisses Count 3 because, under the facts alleged, Plaintiff has incurred no actual damages as a result of the claimed violation of the Illinois Notary Public Act. He chose to cease representing Defendant, thereby precipitating his own loss of income, and his concern that he might someday be sued by someone is speculative.

THEREFORE, Defendants CSB, Craig Lewis, and William Lewis' Motion to Dismiss Complaint (d/e 10) is DENIED with respect to Count 1 and allowed with respect to Counts 2 and 3.

IT IS THEREFORE SO ORDERED.

ENTER: June 7, 2006.

FOR THE COURT:

                                      s/ Jeanne E. Scott  
                                 JEANNE E. SCOTT  
                     UNITED STATES DISTRICT JUDGE